IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SERGIO GARCIA, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 15 CV 1393 |
| ) | |
| v. ) | Hon. Charles R. Norgle |
| ) | |
| OFFICER MATTHEW HUDAK et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND OPINION**

CHARLES R. NORGLE, United States District Court Judge

Plaintiff Sergio Garcia ("Plaintiff") brings his First Amended Complaint against Officers Matthew Hudak ("Hudak"), Terrance O'Brien ("O'Brien"), Pamon Mir ("Mir") (collectively the "Individual Defendants"), and the Village of Schaumburg (collectively, "Defendants"), alleging that the Individual Defendants violated Plaintiff's due process rights under the Fourth, Fifth, and Fourteenth Amendment to the Constitution.[1] Before the Court is Defendants' motion to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, Defendants' motion is granted in part and denied in part.

**I. BACKGROUND**

**A. Allegations Underlying the State Criminal Case**

The following facts are taken from Plaintiff's complaint. On November 17, 2011, at approximately 8:15 p.m., Plaintiff was sitting in a car owned by Craddock, a third-party, in a parking lot at Woodfield Mall in Schaumburg, Illinois. Around this time, the Individual Defendants approached Plaintiff and arrested him. Plaintiff alleges that when he was arrested, he

---

[1] The Village of Schaumburg is a defendant in this matter for indemnification purposes. See 745 Ill. Comp. Stat. 10/2-302.

was not in possession of any controlled substances and had not engaged in any drug transactions. Moreover, Plaintiff alleges that the Individual Defendants did not find any drugs when they searched him; instead, he alleges that they planted cocaine and marijuana on him during his arrest.

Plaintiff alleges that after his arrest, the Individual Defendants furthered this fabrication by falsely stating in the resulting police report that a confidential informant ("CI") had told them that Plaintiff was going to buy cocaine from Craddock. Plaintiff alleges further that the report also related the following chain of events, which Plaintiff claims are false.

The report said that the CI received a phone call from Craddock, who told the CI that he was in the parking lot at Woodfield Mall. The report went on to say that once the Individual Defendants discovered Plaintiff in Craddock's car, they found a digital scale and cocaine in a bag on his lap, which he subsequently threw on the ground. The report also states that Plaintiff told the Individual Defendants that he had marijuana in his pocket, which they found after a search. In addition, the report states that Plaintiff told the officers that he bought cocaine in Melrose Park to give to Craddock to sell to someone else, and that Plaintiff took a small amount of the cocaine for his personal use. Plaintiff states that he never made these inculpatory remarks to the Individual Defendants.

Plaintiff was eventually charged with possession of cocaine with intent to deliver. At his pretrial hearings, the Individual Defendants testified in a manner consistent with their police report. Plaintiff alleges that the Individual Defendants never disclosed to the state's attorney that they had fabricated the incriminating evidence. With the "knowledge" that the fabricated evidence would not be inadmissible at trial, and lacking evidence of the actual fabrication, Plaintiff alleges that he pleaded guilty to the charged offense on September 24, 2012. First Am.

Compl. ¶ 24. He was sentenced that same day to eleven years in prison.

**B. Events Leading to the Vacatur of Plaintiff's Criminal Conviction**

On January 13, 2013, in conjunction with a joint investigation between the United States Drug Enforcement Agency ("DEA") and the DuPage County State's Attorney Office:

> Hudak and O'Brien were charged with multiple counts of unlawful delivery of controlled substances, armed violence, unlawful drug conspiracy, official misconduct, theft, and burglary. The charges alleged, among other acts, that Defendants Hudak and O'Brien illegally search and seized individuals' homes, vehicles, and persons to extort narcotics and/or money to operate a drug ring. Hudak and O'Brien used a confidential informant to sell narcotics that the officers confiscated while working and split the proceeds with another officer who was also charged with felony drug crimes.

First Am. Compl. ¶ 27. O'Brien and Hudak pleaded guilty on March 21, 2014 and April 29, 2014, and were sentenced to twenty-four and twenty-six years in prison, respectively. The complaint does not state the name of the other officer, nor discuss whether Mir was charged with a criminal offense.

In light of these convictions, Plaintiff's criminal defense attorney moved the state court to vacate his conviction. Although the state court reinstated criminal proceedings, the prosecutor moved the court to *nolle prosequi* the case on August 19, 2014. Plaintiff was immediately released from prison.

**C. Procedural History**

Plaintiff was arrested on November 17, 2011. Subsequently, Plaintiff filed his original complaint on February 13, 2015, alleging violations of his constitutional rights under the Fourth, Fifth, and Fourteenth Amendments, pursuant to 42 U.S.C. § 1983. Due to the insufficiency of its allegations, the Court dismissed Plaintiff's complaint; Plaintiff subsequently filed his First Amended Complaint on June 26, 2015. On July 17, 2015, Defendants filed the instant motion to dismiss, which has been fully briefed and is now before the Court.

## II. DISCUSSION

### A. Standard of Decision

In order to survive a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint "must actually *suggest* that the plaintiff has a right to relief, by providing allegations that raise a right to relief above the speculative level." Indep. Trust Corp. v. Stewart Info. Servs. Corp., 665 F.3d 930, 935 (7th Cir. 2012) (internal quotation marks and citation omitted); see also Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007) (stating that a complaint must allege "enough facts to state a claim to relief that is plausible on its face"). The Court accepts "all well-pleaded allegations of the complaint as true and view[s] them in the light most favorable to the plaintiff." Indep. Trust Corp., 665 F.3d at 934 (internal quotation marks and citation omitted). "A claim for relief must be plausible rather than merely conceivable or speculative. But all that means is that the plaintiff must 'include enough details about the subject matter of the case to present a story that holds together.'" Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind., 786 F.3d 510, 526 (7th Cir. 2015) (quoting Carlson v. CSX Transp., Inc., 758 F.3d 819, 826 (7th Cir. 2014)).

### B. The Sufficiency of the Allegations

Plaintiff's First Amended Complaint lists four claims for relief. Count I seeks relief for the Individual Defendants' alleged violation of Plaintiff's due process rights flowing from their evidence fabrication. Count II seeks relief for Defendants' alleged violation of Plaintiff's due process rights for the Individual Defendants' withholding and concealing material exculpatory evidence. Count III is for the Individual Defendants' alleged conspiracy to deprive Plaintiff of his constitutional rights. Count IV is a malicious prosecution claim under Illinois common law.

*1. Primary constitutional violations - counts I and II.*

~~Before discussing these counts, the Court notes that there is some confusion as to the interplay between a fabrication-of-evidence claim and a denial-of-procedural-due-process claim that is based on the government's fabrication of evidence. Fabricating evidence that is then used as probable cause to arrest~~ Arresting an individual without probable cause—including fabricating evidence that is then used as probable cause to arrest—is a Fourth Amendment violation. See Smith v. City of Chicago, 913 F.2d 469, 473 (7th Cir. 1990). If proceedings are ~~then~~ later initiated against the arrestee, the ~~facts~~ allegations may state a claim for malicious prosecution, provided the other elements are met, which are discussed in Part II.B.3 of the Opinion, *infra*. See Wallace v. Kato, 549 U.S. 384, 389 (2007) ("[A] false imprisonment ends once the victim becomes held *pursuant to legal process*—when, for example, he is bound over by a magistrate or arranged on charges."). If the proceedings result in the loss of liberty post-conviction, the government's failure to disclose the original fabrication of evidence to the defendant could result in a claim for procedural due process violations. See Whitlock v. Bruggemann, 682 F.3d 567, 580 (7th Cir. 2012) ("We have consistently held that a police officer who manufactures false evidence against a criminal defendant violates due process if that evidence is later used to deprive the defendant of her liberty in some way.").

While each of these alleged deprivations concern discrete constitutional protections, they usually involve common facts and elements of proof. Further complicating matters is the reality that the presence or absence of a few dispositive factual allegations can foreclose certain claims or reveal different constitutional violations. With these discrete claims delineated, the Court examines the due process rights at issue in Plaintiff's case.

"The purpose of § 1983 is to deter state actors from using the badge of their authority to

deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." Wyatt v. Cole, 504 U.S. 158, 162 (1992) (citations omitted). "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method of vindicating federal rights elsewhere conferred." Albright v. Oliver, 510 U.S. 266, 271 (1994) (plurality op.) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)). Accordingly, the identification of "the specific constitutional right allegedly infringed" is the "first step" in a Section 1983 analysis. Id. In addition, the Constitution is not violated if applicable state law provides an adequate remedy for the alleged violation. Newsome v. McCabe, 256 F.3d 747, 751 (7th Cir. 2001). For each count, then, the Court must determine the constitutional right at issue, and decide if there is an adequate remedy for the violation under state law.

### a. Count I – fabrication of inculpatory evidence.

Plaintiff does not state the applicable constitutional provision at issue in his case, only a "due process claim for fabrication of evidence." Pl.'s Resp. Opp'n Defs.' Mot. Dismiss Pl.'s First Am. Compl. 5; see also First Am. Compl. ¶¶ 37-38. From the Court's review of his complaint, Plaintiff's fabrication-of-evidence claim appears to state a claim for false arrest, in violation of the Fourth Amendment. Plaintiff, "'therefore, can prevail if he shows that the defendants fabricate evidence leading to his false arrest and subsequent unreasonable seizure.'" See Smith, 913 F.2d at 472 (quoting Smith v. Springer, 859 F.2d 31, 34 (7th Cir. 1988), overruled on other grounds by Heck v. Humphrey, 512 U.S. 477 (1994)).

As a fundamental matter, police are constitutionally prohibited from fabricating inculpatory evidence. See, e.g., Mooney v. Holohan, 294 U.S. 103, 112 (1935) ("[Due process] cannot be deemed to be satisfied by mere notice and hearing if a state has contrived a conviction through the pretense of a trial which in truth is but used as a means of depriving a defendant of

6

liberty through a deliberate deception of court and jury by presentation of testimony known to be perjured."), cited with approval in Whitlock, 682 F.3d at 581 ("[W]e believe that the clear implication of Mooney and its progeny is that a [state actor's] creation of false evidence also violates due process . . . ."). Such conduct is a Fourth Amendment violation—if the evidence upon which probable cause depends is fabricated by the police, then there can be no probable cause to arrest. See Smith, 913 F.2d at 473 (requiring a plaintiff to "demonstrate that the fabricated evidence resulted in an absence of probable cause for [the] arrest, meaning that [the plaintiff] would not have been lawfully arrested in the absence of the fabricated evidence" to recover "more than nominal damages").

While Plaintiff appears to state a claim for false arrest, such claims accrue (for statute of limitations purposes) at the time of the arrest. See Brooks v. City of Chicago, 564 F.3d 830, 832 (7th Cir. 2009). In Plaintiff's case, he was arrested on November 17, 2011. First Am. Compl. ¶¶ 8-20. Illinois has a two-year statute of limitations for Section 1983 claims, see Brooks, 564 F.3d at 832, and accordingly, any claim for false arrest would be time-barred.

Plaintiff, however, also plausibly alleges that the Individual Defendants' fabrication of inculpatory evidence deprived him of the right to be free from prosecution without probable cause—essentially a claim for constitutional malicious prosecution. But the Seventh Circuit has held that there can be no constitutional offense when the state in which the violation occurred provides an adequate remedy. See Newsome, 256 F.3d at 750; see also Stinson v. Gauger, 799 F.3d 833, 842 (7th Cir. 2015). Because Illinois has such a remedy, see Saunders-El v. Rodhe, 778 F.3d 556, 561 (7th Cir. 2015), Plaintiff's constitutional rights are not implicated in that regard. See Newsome, 256 F.3d at 750 ("[T]he existence of a tort claim under state law knocks out any constitutional theory of malicious prosecution."). Whether Plaintiff states a claim for

malicious prosecution under Illinois law is discussed in Part II.B.3 of this Opinion, infra. As his allegations relate to a constitutional deprivation, however, he does not state a claim, and Count I of his First Amended Complaint is therefore dismissed.

### b. *Count II – deprivation of right to a fair proceeding.*

Plaintiff's count II alleges that the Individual Defendants violated his constitutional rights by failing to disclose material, exculpatory evidence to Plaintiff before he pleaded guilty. The Supreme Court has long recognized the right of criminal defendants to receive material exculpatory or impeachment evidence (sometimes known as "Brady material") from the prosecution for use at trial. See Brady v. Maryland, 373 U.S. 83, 87 (1963); see also Sauders-El, 778 F.3d at 561. Law enforcement's knowledge of such evidence is imputed to the prosecutors; thus, prosecutors have a duty[2] to disclose Brady material if the material is known to law enforcement. See Manning v. Miller, 355 F.3d 1028, 1034 (7th Cir. 2004) (citing Kyles v. Whitley, 514 U.S. 419, 438 (1995)) ("[T]he Supreme Court found that the Brady duty of turning over exculpatory evidence includes not only the prosecutor, but the investigating officers as well.").

Not every failure to provide Brady evidence offends the Constitution, however. See Saunders-El, 778 F.3d at 561. In order to state a claim under Section 1983 for the State's failure to disclose the presence of Brady evidence, Plaintiff "must make a 'showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'" Id. (quoting Kyles, 514 U.S. at 435). It follows then that a verdict of acquittal can virtually never result in a constitutional tort. While not taking a definitive position on the matter, the Seventh Circuit is "doubtful . . . that an acquitted defendant can ever

---

[2] While the duty exists nonetheless, a prosecutor is absolutely immune from liability for conduct related to prosecuting the case. See Imbler v. Pachtman, 424 U.S. 409, 427 (1976).

8

establish the requisite prejudice for a Brady violation." See Carvajal v. Dominguez, 542 F.3d 561, 570 (7th Cir. 2008); see also Saunders-El, 778 F.3d at 561-62 (finding that "at least" the Sixth, Eighth, Tenth, and Eleventh Circuits have held that a trial that results in an acquittal can never result in a Brady violation). In other words, there can be no Brady violation unless the criminal defendant (*cum* civil plaintiff) has experienced some post-conviction loss of liberty. See Sauders-El, 778 F.3d at 561 (holding no Brady violation for plaintiff that was released on bond following arrest and subsequently acquitted at trial); see also Alexander v. McKinney, 692 F.3d 553, 557 n.2 (7th Cir. 2012) ("Nor does the burden of appearing in court and attending trial, in and of itself, constitute a deprivation of liberty. It would be anomalous to hold that attending a trial deprives a criminal defendant of liberty without due process of law, when the purpose of the trial is to effectuate due process.").

The above is all settled law as it relates to the use of evidence at trial. A much closer issue, and the one presently before the Court, is whether the State has a duty to disclose Brady material before the criminal defendant pleads guilty—thus triggering § 1983 liability. When a criminal defendant pleads guilty, he waives several constitutional rights, including the right against compulsory self-incrimination, the right to trial by jury, and the right to confront one's accusers. Boykin v. Alabama, 395 U.S. 238, 243 (1969). It is thus incumbent on the judge taking the plea to ensure that the defendant pleas knowingly and voluntarily. See Brady v. United States, 397 U.S. 742, 748 (1970).

In United States v. Ruiz, the Ninth Circuit held that when a prosecutor withholds impeachment evidence from a criminal defendant, and he subsequently pleads guilty, the plea is not knowingly and voluntarily made, and is thus invalid. See 241 F.3d 1157, 1164 (9th Cir. 2001), rev'd 536 U.S. 622 (2002). The Supreme Court reversed the Ninth Circuit, and clarified

9

that the disclosure of impeachment evidence is, at its heart, a protection designed to ensure a fair trial. See United States v. Ruiz, 536 U.S. at 629. Because the Supreme Court found that "impeachment information is special in relation to the *fairness of a trial*, not in respect to whether a plea is *voluntary* ('knowing,' 'intelligent,' and 'sufficient[ly] aware')," it held that the Constitution does not require the "preguilty plea disclosure of impeachment information." Id.

But the Court did not address whether the Government had a duty to disclose exculpatory evidence because "in any case, as the proposed plea agreement at issue here specifie[d], the Government w[ould] provide 'any information establishing the factual innocence of the defendant' regardless." Id. at 631. In so holding, the Supreme Court implicitly distinguished "impeachment" evidence from the other component of potential Brady material—factual exculpatory evidence. See id.; compare "exculpatory evidence," Black's Law Dictionary (10th ed. 2014) ("Evidence tending to establish a criminal defendant's innocence.") with "impeachment ~~The Supreme Court's silence has caused the circuits considering the issue to split on whether—absent a provision in the plea agreement to the contrary—the Government has a duty to disclose factual exculpatory evidence before the criminal defendant pleads guilty. See United States v. Moussaoui, 591 F.3d 263, 286 (4th Cir. 2010) (recognizing opposing views among the circuits and declining to reach the issue).~~ evidence," id. ("Evidence used to undermine a witness's credibility.").

In McCann v. Mangialardi, the Seventh Circuit discussed Ruiz's application to a situation where the plaintiff alleged that the defendant, a deputy chief of police, "violated [the plaintiff's] right to procedural due process by failing to disclose to prosecutors, defense counsel, and the court, prior to the entry of his guilty plea, that the drugs found in the car he was driving on the day of his arrest were planted without his knowledge." 337 F.3d 782, 787 (7th Cir. 2003). The

plaintiff alleged that in his related criminal case for drug possession, the failure to disclose violated his constitutional rights because the failure caused him to plead guilty to a crime that he did not commit. Id.

In reviewing the district court's dismissal of the plaintiff's case on the pleadings, the Seventh Circuit analyzed Ruiz's holding vis-à-vis the preguilty-plea duty to disclose factually exculpatory evidence in the context of a summary judgment motion. In analyzing Ruiz, the McCann court discussed:

> Ruiz held that [preguilty plea disclosures of impeachment information] were not mandated by the Due Process Clause, but in doing so noted that "impeachment information is special in relation to the fairness of the trial, not in respect to whether a plea is voluntary . . . ." In contrast, the exculpatory evidence at issue in this case—i.e., [the defendant's] alleged knowledge of [the plaintiff's] factual innocence—is entirely different. . . .
>
> The Supreme Court's decision in Ruiz strongly suggests that a Brady-type disclosure might be required under the circumstances of his particular case. In holding that the Due Process Clause does not require the government to disclose impeachment information prior to the entry of a criminal defendant's guilty plea, the Court in Ruiz reasoned that it was "particularly difficult to characterize impeachment information *as critical information of which the defendant must always be aware prior to pleading guilty* . . . ." The Court also noted that "the proposed plea agreement at issue . . . specifies the Government will provide 'any information established the factual innocence of the defendant,'" and "[t]hat fact, along with other guilty-plea safeguards . . . diminishes the force of [defendant's] concern that, in the absence of the impeachment information, innocent individuals accused of crimes will plead guilty." Thus, Ruiz indicates a significant distinction between impeachment information and exculpatory evidence of actual innocence. Given this distinction, it is highly likely that the Supreme Court would find a violation of the Due Process Clause if prosecutors or other relevant government actors have knowledge of a criminal defendant's factual innocence but fail to disclose such information to a defendant before he enters into a guilty plea.

Id. at 787-88 (quoting and citing Ruiz, 536 U.S. at 629-31) (internal citations otherwise omitted) (emphasis added). Ultimately, the court did not resolve the issue, however, because the plaintiff "ha[d] not presented any evidence that [the defendant] knew about the drugs being planted in [the plaintiff's] car prior to the entry of his guilty plea," which would have otherwise triggered

11

the duty. See id. at 788.

Applying the reasoning articulated in McCann, the Court concludes that the State has a constitutional duty to disclose material exculpatory evidence to a criminal defendant before the defendant pleads guilty. This conclusion is bolstered by the fact that ~~While a criminal defendant can "only attack the voluntary and intelligent character of the guilty plea," see Tollett v. Henderson, 411 U.S. 258, 267 (1973),~~ a criminal defendant's guilty plea is not voluntary if the prosecution withholds factual exculpatory evidence. See Brady ~~v. United States~~, 397 U.S. ~~742, at~~ 757 ~~(1970)~~ (holding that a guilty plea is not vulnerable to attack "absent misrepresentation or other impermissible conduct by state agents"); see also Miller v. Angliker, 848 F.2d 1312, 1320 (2d Cir. 1988) (withholding material exculpatory evidence is impermissible conduct by state agents within Brady holding). Moreover, requiring the State to disclose all factual exculpatory evidence before allowing the defendant to plead guilty removes the incentive for an unscrupulous prosecutor to "'deliberately withhold exculpatory information as part of an attempt to elicit guilty pleas.'" See United States v. Nelson, 979 F. Supp. 2d 123, 130 (D.D.C. 2013) (quoting Sanchez v. United States, 50 F.3d 1448, 1453 (9th Cir. 1985)).

Applying the Brady elements to Plaintiff's complaint, the Court finds further that he has stated a claim for deprivation of his constitutional right to procedural due process. "In order to bring a Brady claim, a plaintiff must demonstrate that: (1) the prosecution suppressed evidence; (2) the evidence was favorable to the accused; and (3) the evidence was material, that is, there was a reasonable probability that prejudice ensued." Alexander, 692 F.3d at 556.

Here, Plaintiff alleges that the State did not disclose (*i.e.* suppressed) any evidence that the Individual Defendants had fabricated the evidence used to prosecute Plaintiff. This exculpatory evidence, if disclosed, would have been very favorable to Plaintiff because it would

12

have illustrated his innocence—that he was not in possession of narcotics when he was arrested. The Individual Defendants' failure to disclose prejudiced Plaintiff because Plaintiff alleges that he would not have pleaded guilty if he had knowledge of the Individual Defendants' evidence fabrication. Accordingly, Plaintiff has plausibly alleged all of the elements of a Brady claim.

Defendants raise two collateral points that—they argue—foreclose Plaintiff's Brady claim. First, they argue that Plaintiff knew the Individual Defendants fabricated the evidence against him, and thus he cannot now claim that it was wrongfully withheld from him. For support, Defendants cite to Gauger v. Hendle, 349 F.3d 354, 360 (7th Cir. 2003). In Gauger, the plaintiff/criminal defendant argued that, where the police gave the prosecutor a false account of his interrogation, the government had a Brady obligation to disclose the "truthful versions of [the plaintiff's] statements at the interrogation to the prosecutors to be forwarded to [plaintiff's] counsel at his criminal trial." Id. The Gauger Court rejected this proposed extension of Brady because "[i]t implies that the state has a duty not merely to disclose but also to create truthful exculpatory evidence. Indeed the duty to disclose falls out, because [the plaintiff] knew what he had said at the interrogation." Id. (citations omitted). The Gauger Court went on to distinguish the concealment of exculpatory evidence (actionable) from concealing the fact that the witnesses are giving false evidence (not actionable). Id. ("[The plaintiff] wants to make every false statement by a prosecution witness the basis for a civil rights suit, on the theory that by failing to correct the statement the prosecution deprived the defendant of Brady material, that is, the correction itself.").

The facts in Gauger are inapplicable to this case. Here, the problem is not that the Individual Defendants gave false testimony on the stand. The problem is that the Individual Defendants fabricated inculpatory evidence by allegedly planting drugs on Plaintiff, and then

13

testified consistently with the fabricated evidence. Put another way, Plaintiff is not alleging that the Individual Defendants withheld the fact that he was innocent from him. Rather, Plaintiff knew that he was innocent—his complaint is that the Individual Defendants suppressed their illegal activities—the evidence necessary for Plaintiff to exculpate himself.

Second, Defendants argue that they are entitled to absolute immunity for the testimony they gave as witnesses. In general, "when a witness commits perjury, he or she is granted absolute immunity from civil liability." Manning, 355 F.3d at 1031 (citing Briscoe v. LaHue, 460 U.S. 325, 331-32 (1983)). But the Manning Court distinguished perjury and conspiracy to commit perjury—for which there is absolute immunity—from withholding exculpatory evidence—for which there is only qualified immunity. Id. at 1033 (holding no absolute immunity where plaintiff accused officers "of behavior that goes well beyond testimony given at trial.").

Here, while Plaintiff alleges that the Individual Defendants' testimony misrepresented the facts in his underlying criminal case, he also alleges misrepresentations regarding conduct that happened outside the courtroom—planting drugs and concocting inculpatory statements in an attempt to secure Plaintiff's conviction. The Individual Defendants did not falsely testify about the facts in the criminal matter. Instead, they fabricated a new reality—one in which Plaintiff possessed narcotics with the intent to distribute them—then testified accordingly. This alleged behavior deprived Plaintiff of his right to receive Brady material and consequently, the Individual Defendants are not entitled to absolute immunity for their role as witnesses in Plaintiff's criminal case. In sum, the Court finds that Plaintiff has pleaded all of the elements for a Brady claim, he had no knowledge of the exculpatory evidence before he pleaded guilty, and the Individual Defendants are not entitled to absolute immunity for their witness testimony. Therefore, the Court denies Defendants' motion to dismiss Plaintiff's claim for deprivation of the

right to procedural due process.

   *2. Count III – conspiracy to violate constitutional rights.*

Defendants argue that Plaintiff's conspiracy claim "is doomed as it derives from his failed constitutional claims." Defs.' Joint Rule 12(b)(6) Mot. Dismissal Pl.'s First Am. Compl. 12 [hereinafter "Defs.' Mot."]; see Indianapolis Minority Contractors Ass'n, Inc. v. Wiley, 187 F.3d 743, 754 (7th Cir. 1999). Defendant does not challenge Plaintiff's conspiracy claim on any other ground. Because the Court finds that Plaintiff plausibly states a violation of his right to procedural due process under Brady, Plaintiff states a claim that the three Individual Defendants conspired to deprive Plaintiff of his constitutional rights.

   *3. Count IV – malicious prosecution under Illinois law.*

Defendants also argue that Plaintiff cannot state a claim for malicious prosecution. To state a claim for malicious prosecution in Illinois, Plaintiff must show that "(1) [D]efendants commenced judicial proceedings, (2) for which there was no probable cause, (3) the proceeding were [*sic*] instituted or continued maliciously, (4) the proceedings were terminated in [P]laintiff's favor, and (5) [P]laintiff sustained an injury." See Saunders-El, 778 F.3d at 561 (citing Sneed v. Rybicki, 146 F.3d 478, 480-81 (7th Cir. 1998)). Defendants do not challenge the sufficiency of Plaintiff's allegations that the proceedings were commenced and continued maliciously and without probable cause, and that Plaintiff was injured as a result of the proceedings. They only argue that as a matter of law, Plaintiff's criminal case was not terminated in his favor because he pleaded guilty. In support of their argument, Defendants rely on the Seventh Circuit's decision in Bontkowski v. United States, 28 F.3d 36 (7th Cir. 1994).

In Bontkowski, the plaintiff pleaded guilty to aiding and abetting bank fraud. Id. at 36. As

a part of the plea colloquy, however, the plaintiff (Bontkowski) testified that "it was never [his] intention to defraud [the] bank." See Bontkowski v. United States, 850 F.2d 306, 310 (7th Cir. 1988). At the time plaintiff pleaded guilty, the law did not require the Government to prove that Bontkowski shared the primary offenders' criminal intent to defraud. See id. at 314. Subsequently, the Seventh Circuit in United States v. Bruun "for the first time set out the requirements for finding a defendant guilty of aiding and abetting in the misapplication of bank funds involving stolen collateral. No decision regarding the elements of this crime, under these circumstances, had previously been handed down." Bontkowski, 850 F.2d at 310 (citing Bruun, 809 F.2d 397, 411-12 (7th Cir. 1987)). The Bruun Court held that where there was no evidence that the aider knew that the collateral was stolen, the aider "lacked the shared criminal intent to convict him of aiding and abetting," "[b]ecause his acts would have been entirely innocent had the facts been as he supposed them to be." Bruun, 809 F.2d at 412.

Because the Bruun decision changed the elements of the offense and Bontkowski's plea agreement did not state that he knew the collateral was stolen, the court granted Bontkowski's petition to vacate his conviction, which the Government did not oppose. Bontkowski, 28 F.3d at 37. After the court vacated his sentence, Bontkowski filed a claim for malicious prosecution. Initially, the Seventh Circuit noted that the fact that the criminal proceeding was commenced with probable cause barred Bontkowski's claim for malicious prosecution. Id. Ultimately, the Seventh Circuit affirmed the claim's dismissal because "the vacating of his conviction was not based on any defect in the facts on which his conviction was based. Rather, the government on remand chose not to contest his motion to vacate." Id. The Bontkowski Court went on to reason that:

> The facts alleged against Bontkowski at the time of his guilty plea were sufficient
> for a conviction under the law as it was understood at that time, before it was

16

clarified by the Bruun case. The colloquy between Bontkowski and the district court judge at the time of his guilty plea leaves no doubt that he pled guilty to violating the law as it was in 1984.

Id. At its core, the holding to be gleaned from the Bontkowski decision is that there is no liability for malicious prosecution if the prosecution was supported by probable cause that the defendant violated the law as it existed at the time of the violation. See id. In contrast, Plaintiff here states in his complaint that the vacating of his conviction was based on a defect in the facts that formed the basis of his conviction, not on a change in the law. He alleges that he never violated the law, and that the Individual Defendants instead fabricated the evidence used to provide a foundation for his guilty plea. He does not allege that the acts that he pleaded guilty to—criminal at the time—were subsequently rendered non-criminal by a later court decision. The Seventh Circuit's decision in Bontkowski is thus distinguishable from this case.

Defendants also cite Bontkowski for the contention that a guilty plea at any point in the criminal proceeding automatically forecloses a later claim for malicious prosecution. See id. at 37-38 ("Bontkowski may not on one day admit that he did the things he is charged with, and then on a later date claim that it was malicious to charge him with doing the things he admitted he did."). As an initial matter, the Court finds that this statement refers only to the specific facts of the case—that when Bontkowski pleaded guilty, the conduct admitted to was in fact criminal behavior.

Furthermore, Defendants' contention is an inaccurate statement of Illinois law. Courts in Illinois "look to the circumstances and nature of the prior disposition to determine whether it was a 'favorable termination' of the proceedings." See Velez v. Avis Rent A Car Sys., Inc., 721 N.E.2d 652, 656 (Ill. App. Ct. 1999) (quoting Cult Awareness Network v. Church of Scientology Int'l, 685 N.E.2d 1347, 1350 (Ill. 1997)). "[A] favorable termination is limited to only those legal dispositions that can give rise to an inference of lack of probable cause." Cult Awareness

17

Network, 685 N.E.2d at 1353; see also Swick v. Liautaud, 662 N.E.2d 1238, 1242-43 (Ill. 1996) ("In the civil malicious prosecution context, the majority rule is that a criminal proceeding has been terminated in favor of the accused when a prosecutor formally abandons the proceeding via a *nolle prosequi*, unless the abandonment is for reasons not indicative to the accused.").

In this case, Plaintiff has plausibly alleged that the State declined to prosecute his case further because there was never probable cause to prosecute him in the first place, only fabricated inculpatory evidence. Specifically, in Paragraph 29 of his First Amended Complaint, Plaintiff alleges:

> As a result of the charges against Defendants Hudak and O'Brien for various felony drug crimes, and with knowledge that Defendants Hudak and O'Brien fabricated the false evidence, and withheld exculpatory evidence, which subsequently led to Plaintiff's wrongful conviction and incarceration, on August 19, 2014 the Cook County State's Attorney dismissed all charges against Plaintiff.

First Am. Compl. ¶ 29. The Court finds that, taking all allegations in the complaint as true, Plaintiff has plausibly alleged that his criminal matter was terminated in a manner indicative of his innocence, namely because the prosecutor allegedly discovered that the evidence originally supporting probable cause never existed, and had been fabricated by the Individual Defendants. As Defendants do not contest the presence of the other elements, the Court finds that Plaintiff's complaint sufficiently states a claim for malicious prosecution. Accordingly, Defendants' motion to dismiss Plaintiff's Count IV is denied.

### III. CONCLUSION

In sum, Plaintiff has sufficiently stated certain claims upon which relief can be granted. Although there is no claim under Section 1983 for deprivation of substantive due process or malicious prosecution, and any potential claim for false arrest is time-barred, Plaintiff has stated a claim for malicious prosecution under Illinois law. In addition, the Court finds that the State failed to disclose material exculpatory evidence regarding the Individual Defendants' fabrication

of evidence to Plaintiff before he pleaded guilty. Last, because the Court finds that Plaintiff has stated underlying constitutional claims, his conspiracy claim may proceed as well. Accordingly, Defendants' motion to dismiss, brought pursuant to Federal Rule of Civil Procedure 12(b)(6), is granted in part and denied in part. Count I of Plaintiff's First Amended Complaint is dismissed.

IT IS SO ORDERED.

ENTER:

CHARLES RONALD NORGLE, Judge
United States District Court

DATE: January 5, 2016